UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PETER CALAUTTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| JAMES SHANAHAN, in his individual capacity, | ) |
| | ) |
| SAA BOARD OF REVIEW MEMBERS ONE, TWO, THREE, FOUR, FIVE AND SIX, in their individual capacities, | ) CASE NO. 1:18-cv-119 |
| | ) |
| and | ) |
| | ) |
| LAUREN ROBEL, individually, and in her official capacity as Provost of Indiana University, Bloomington, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**I.  NATURE OF THE CASE**

1.  Plaintiff Peter Calautti ("Calautti") sues James Shanahan ("Shanahan"), and SAA Board of Review Members One through Six, in their individual capacities, for depriving him of rights guaranteed by the First Amendment and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.  Calautti also sues Lauren Robel ("Robel"), individually, and her official capacities as Executive Vice-President, Chief Academic Officer, and Provost of Indiana University Bloomington, for depriving him of rights guaranteed by the First Amendment and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983.

**II.  PARTIES**

2.  Calautti is a citizen of the United States, and at all times relevant to this action, resided in Bloomington, Indiana, within the geographical boundaries of the Southern District of

Indiana.

3. At all times relevant to this action, Calautti was enrolled as a student in, and was employed as a Student Academic Associate ("SAA") by, the Media School at Indiana University ("Media School"), in Bloomington, Indiana.

4. James Shanahan is a citizen of the United States, and at all times relevant to this action, was employed as the Dean of the Media School.

5. SAA Board of Review Members One, Two, Three, Four, Five, and Six (collectively, "Review Board Members"), are, on information and belief, citizens of the United States, and at all times relevant to this action were members of the SAA Board of Review, at Indiana University Bloomington.

6. Lauren Robel is a citizen of the United States, and at all times relevant to this action, was Executive Vice-President, Chief Academic Officer, and Provost of Indiana University, Bloomington.

7. The Media School is a school within Indiana University ("IU"), which is an instrumentality chartered by the State of Indiana, and which is an arm of the State of Indiana.

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. All events giving rise to this action occurred in within the geographic boundaries of the Southern District of Indiana, making venue proper in this Court.

### III. FACTUAL ALLEGATIONS

9. In the Spring of 2016, Calautti was a Ph.D. student in cinema studies, and working as an SAA, at the Media School.

10. Calautti had always received very favorable evaluations of his teaching, and had never been the subject of a complaint of any kind regarding his teaching.

11. Shanahan admitted "that no concerns [had] been brought to his attention by any student regarding Mr. Calautti's behavior, civility, or competence as member of the school's teaching personnel."

12. In March 2016, Calautti was mentioned in an article in *The Chronicle of Higher Education* in which he was identified as a supporter of then-candidate Donald Trump.

13. In April, Calautti published an essay on VOX.com's "First Person" page in which he publically identified himself as a Trump supporter, and discussed his reasons for that position. Calautti also identified himself as tending to align with the "alt-right" political movement.

14. In the essay, Calautti made reference to the fact that his view was neither popular or generally held by others in academia.

15. On or about May 20, 2016, Shanahan received what purported to be "snippets" of postings Calautti had allegedly made on social media.

16. The "snippets" were allegedly taken from Calautti's private, extramural social media account.

17. The "snippets" were purportedly threats against the person who purported to have sent the posts to Shanahan, Mohammed Bagha ("Bagha"), a citizen of Saudi Arabia, who has no connection with Indiana University.

18. The sender also referred to the fact that Calautti was an acknowledged Trump supporter.

19. Shanahan reported the matter to the IU Police, but the police took no action.

20. Calautti was not informed of the "snippets" until August 11, 2016. Then, on August 15, he was told that he was under investigation. Calautti was finally notified on August 22 that he was accused of

threatening an individual and his children on social media by posting, "Don't forget about forcing you to watch as I beat your shitskin children into being wheelchair bound, brain damaged, drooling drones. PS -You still live in a small town and you and your kin have a rather unusual last name. Watch out." You then posted, "PS - this is you, lol {link to a photo of the individual with one of his children} Shame if anything happened to your children."

21. The "snippets" were never forensically examined to determine where they originated, how they originated, or if they were authentic.

22. Bagha refused to provide any further information concerning the source of the "snippets."

23. Calautti's alleged actions were "investigated" by IU's Office of Student Ethics, which determined that Calautti was responsible for the alleged conduct, and voted to give him a one-year, deferred suspension.

24. Following that decision, Shanahan admitted to being "furious" that Calautti had not been expelled from IU.

25. Shanahan then met with Calautti on September 13, 2016, and on October 5, 2016, notified Calautti that he was being terminated from his position as an SAA.

26. Terminating an SAA from the Media School is a *de facto* expulsion from the Media School.

27. Calautti's case was heard by a University-authorized mediation panel.

28. On November 28, 2016, the mediation panel recommended that Calautti be reinstated as an SAA, subject to increased monitoring of his teaching; a requirement that he sign a statement explicitly denying that he was the author of the alleged threat, and providing that "[s]hould evidence ever come to light that proves otherwise, it would demonstrate bad faith and justify Mr. Calautti's termination"; a requirement that he acknowledge his obligation "to treat all students with fairness,

civility, and without regard to age, color, disability, ethnicity, gender, gender identity, marital status, national origin, race, religion, sexual orientation, or veteran status[;]" and a requirement that he waive his right to bring any civil legal action.

29. Although Calautti was willing to accept the mediation panel's proposal, Shanahan refused.

30. On December 14, 2016, Calautti, pursuant to IU's appeals procedure, requested that the IU SAA Board of Review ("Review Board") give him a hearing, and recommend to the University Provost that he be reinstated.

31. The mediation panel's report may not be used as evidence before the SAA Review Board.

32. In his response to Calautti's request for a hearing, Shanahan referred at length to statements made in the mediation panel's report.

33. Thereafter, on March 2, 2017, the Review Board Members held a hearing on Calautti's case.

34. On April 11, 2017, the Review Board Members voted unanimously to recommend that the Provost uphold Shanahan's decision to terminate Calautti. The Review Board Members' recommendation also referenced statements from the mediation panel's report.

35. On May 15, 2017, Robel affirmed Calautti's termination.

36. Robel's decision explicitly referred to statements Calautti made during the mediation hearing, which were reported by Shanahan.

## IV. LEGAL ALLEGATIONS

**Count One:  Deprivation of Calautti's Right to Free Speech (§ 1983) Against Shanahan**

37. Calautti restates each and every allegation in paragraphs one (1) through thirty-six

(36) of his Complaint as though fully set forth herein.

38. Calautti's right to speak as a private person on matters of public concern and public importance is a liberty interest protected by the First and Fourteenth Amendments to the United States Constitution.

39. In making his alleged remarks, Calautti was addressing an issue of public concern, that is, standards for immigration to the United States.

40. By terminating Calautti for his alleged comments, Shanahan deprived Calautti of his right to speak on that issue, in violation of the First Amendment.

41. In terminating Calautti as an SAA, Shanahan was exercising authority granted to him by Indiana University, and therefore acted under color of state law.

42. Shanahan's unlawful action chilled Calautti's right, as well as the right of other IU Student Academic Appointees, to speak on issues of public importance, in violation of the First Amendment.

43. Shanahan's action was intentional, willful, and/or taken with reckless disregard for Calautti's First Amendment rights.

44. As a result of Shanahan's unlawful actions, Caulautti suffered, and continues to suffer, damages, including but not limited to, loss of his employment, denial of professional advancement, legal expenses, emotional distress, humiliation, embarrassment, and damage to his personal and academic reputation.

### Count 2: Deprivation of Calautti's Right to Free Speech (§ 1983)
### Against Review Board Members

45. Calautti restates each and every allegation in paragraphs one (1) through forty-four (44) of his Complaint as though fully set forth herein.

46. Calautti's right to speak as a private person on matters of public concern and public

importance is a liberty interest protected by the First and Fourteenth Amendments to the United States Constitution.

47. In making his alleged remarks, Calautti was addressing an issue of public concern, that is, standards for immigration to the United States.

48. By recommending Calautti's termination for his alleged comments, the Review Board Members were exercising authority granted to them by Indiana University, and therefore acted under color of state law.

49. The Review Board Members' unlawful actions chilled Calautti's right, as well as the right of other IU Student Academic Appointees, to speak on issues of public importance, in violation of the First Amendment.

50. The Review Board Members' actions were intentional, willful, and/or taken with reckless disregard for Calautti's First Amendment rights.

51. As a result of the Review Board Members' unlawful actions, Caulautti suffered, and continues to suffer, damages, including but not limited to, loss of his employment, denial of professional advancement, legal expenses, emotional distress, humiliation, embarrassment, and damage to his personal and academic reputation.

**Count 3:  Deprivation of Calautti's Right to Free Speech (§ 1983) Against Robel**

52. Calautti restates each and every allegation in paragraphs one (1) through fifty-two (52) of his Complaint as though fully set forth herein.

53. Calautti's right to speak as a private person on matters of public concern and public importance is a liberty interest protected by the First and Fourteenth Amendments to the United States Constitution.

54. In making his alleged remarks, Calautti was addressing an issue of public concern,

that is, standards for immigration to the United States.

55. By affirming Calautti's termination for his alleged comments, Robel was exercising authority granted to her by Indiana University, and therefore acted under color of state law.

56. Robel's unlawful action chilled Calautti's right, as well as the right of other IU Student Academic Appointees, to speak on issues of public importance, in violation of the First Amendment.

57. Robel's action was intentional, willful, and/or taken with reckless disregard for Calautti's First Amendment rights.

58. As a result of the Robel's unlawful actions, Caulautti suffered, and continues to suffer, damages, including but not limited to, loss of his employment, denial of professional advancement, legal expenses, emotional distress, humiliation, embarrassment, and damage to his personal and academic reputation.

### Count 4: Deprivation of Calautti's Right to Due Process (§ 1983) Against Shanahan, the Review Board Members and Robel ("Defendants")

59. Calautti restates each and every allegation in paragraphs one (1) through fifty-nine (59) of his Complaint as though fully set forth herein.

60. As an SAA, Calautti's has a protected property interest in his employment, and is entitled to due process.

61. Defendants' use of statements Calautti made during mediation, despite the confidentiality required of mediation discussions, deprived Calautti of his right to due process, as guaranteed by the Fourteenth Amendment.

62. By terminating, recommending, and/or affirming Calautti's termination for his alleged comments, Defendants were exercising authority granted to them by Indiana University, and therefore acted under color of state law.

63. Defendants' actions were intentional, willful, and/or taken with reckless disregard for

Calautti's First Amendment rights.

64. As a result of Defendants' unlawful actions, Caulautti suffered, and continues to suffer, damages, including but not limited to, loss of his employment, denial of professional advancement, legal expenses, emotional distress, humiliation, embarrassment, and damage to his personal and academic reputation.

### County 5: Institutional Liability

65. Calautti restates each and every allegation in paragraphs one (1) through sixty-five (65) of his Complaint as though fully set forth herein.

66. The Board of Trustees are the duly-appointed governing board of Indiana University, and have statutorily delegated that authority to the President of the University.

67. With respect to deciding appeals from the SAA Board of Review, the President of Indiana University has delegated final decision-making authority to Robel.

68. As Executive Vice-President, Chief Academic Officer, and Provost of Indiana University Bloomington, Robel is the final decision-making authority with respect to SAA terminations on that campus.

69. Acting in her official capacity, Robel deprived Calautti of his constitutionally-protected rights by terminating, and/or confirming the termination of, Calautti's appointment as an SAA.

70. Robel's action was intentional, willful, and/or taken with reckless disregard for Calautti's rights.

71. As a result of the Robel's unlawful actions, Caulautti suffered, and continues to suffer, damages, including but not limited to, loss of his employment, denial of professional advancement, legal expenses, emotional distress, humiliation, embarrassment, and damage to his personal and

academic reputation.

## V. RELIEF REQUESTED

WHEREFORE, Plaintiff Peter Calautti, by counsel, respectfully requests the Court to issue judgment in his favor against all Defendants, and to award him the following relief:

72. Order that IU cease and desist from further violations of the First and Fourteenth Amendments;

73. Order that Calautti be reinstated to the position he held prior to the Defendants' unlawful actions;

74. Order the individual Defendants, jointly and severally, to pay Calautti all lost wages resulting from the Defendants' illegal termination;

75. Order the individual Defendants, jointly and severally, to pay Calautti any and all other financial losses incurred as a result of the Defendants' unlawful actions;

76. Order the individual Defendants, jointly and severally, pay Calautti compensatory damages for their unlawful actions;

77. Order the individual Defendants, jointly and severally, pay Calautti punitive damages for their intentional, willful actions;

78. Order the Defendants, jointly and severally, to pay Calautti's reasonable attorney fees and costs of bringing this action;

79. Order the Defendants, jointly and severally, to pay Calautti pre- and post-judgment interest; and

80. Order the Defendants, jointly and severally, to provide Calautti any and all other relief to which he is entitled.

-11-

        Respectfully submitted,

        *s/   Jay Meisenhelder*
        Jay Meisenhelder, Atty No. 19996-49
        JAY MEISENHELDER EMPLOYMENT
        & CIVIL RIGHTS LEGAL SERVICES, P.C.
        650 North Girls School Road, Suite B20
        Indianapolis, IN  46214
        Office Telephone:	317/231-5193
        Facsimile Number:	317/982-5463
        Email Address:	jaym@ecrls.com